UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| TAYLOR MAYES, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) No. 2:18-CV-0002 JAR |
| v. | ) |
| | ) |
| TRINIDAD AGUILERA, M.D., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Taylor Mayes ("Plaintiff"), proceeding *pro se*, brings this action for monetary damages and injunctive relief pursuant to 42 U.S.C. § 1983 against Trinidad Aguilera, M.D. ("Defendant").[1] Plaintiff alleges Defendant was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Specifically, Plaintiff alleges he was provided inadequate treatment for his infected and ingrown toenail. Defendant moves for summary judgment on the grounds that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. (Doc. No. 17). The motion is fully briefed and ready for disposition. For the following reasons, the motion will be granted.

### I. Background[2]

---

[1] On January 11, 2018, the Court dismissed Dr. Ruanne Stamps, Laurel Davis, T. Bredeman, Bonnie Boley, Lisa Pogue, and "Unknown Nurses" because as to these defendants, the complaint was legally frivolous or failed to state a claim upon which relief can be granted, or both. (Doc. No. 4).

[2] The facts are taken from Defendant's Statement of Uncontroverted Material Facts. ("SOF", Doc. No. 18). Plaintiff did not respond to Defendant's Statement of Facts. Local Rule 4.01(E) provides:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the

1

On February 14, 2017, Plaintiff submitted a Health Services Request complaining of an infected toe. (SOF at ¶ 11). He was seen by Nurse Ashlee Skaggs who noted redness at the nail bed and a slightly swollen right great toe. (SOF at ¶ 12). On February 15, 2017, Dr. Alan Weaver ordered a ten-day prescription of the antibiotic Keflex for Plaintiff. (Id.). Plaintiff made no complaints concerning his toe at appointments with Nurse Kerri Stoner on February 22, 2017, or with Dr. Weaver on March 3, 2017. (SOF at ¶ 14).

Plaintiff complained of ongoing toe symptoms to Nurse Skaggs on March 9, 2017. (SOF at ¶ 15). On March 13, 2017, Plaintiff saw Nurse Jobea Parker in sick call for complaints of an infected toe. (SOF at ¶ 16). Nurse Parker noted a large portion of skin growing over Plaintiff's toenail on the inside of the nail, macerated red or purplish skin, and swelling. She consulted with Defendant, who ordered another round of Keflex, a follow-up appointment, and details for no work, no recreation, shower shoes, and dressing changes once per week. (Id.).

On March 17, 2017, Plaintiff saw Dr. Weaver for complaints of an infected toe which had not resolved after one round of antibiotics. (SOF at ¶ 17). Dr. Weaver noted that Plaintiff had developed a granuloma, which he reported was painful and bled easily with pressure. A

---

appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

Plaintiff's pro se status does not excuse him from complying with local rules, see Schooley v. Kennedy, 712 F.2d 372, 373 (8th Cir. 1983). As a result of his failure to meet the requirements of Local Rule 4.01(E), Plaintiff is deemed to have admitted all facts in Defendant's Statement of Uncontroverted Facts. Turner v. Shinseki, No. 4:08-CV-1910 CAS, 2010 WL 2555114, at *2 (E.D. Mo. June 22, 2010) (citing Deichmann v. Boeing Co., 36 F.Supp.2d 1166, 1168 (E.D. Mo. 1999)). However, Plaintiff's failure to respond properly to Defendant's motion does not mean summary judgment should be automatically granted in favor of Defendant. Even if the facts as alleged by Defendant are not in dispute, those facts still must establish he is entitled to judgment as a matter of law. Cross v. MHM Corr. Servs., Inc., No. 4:11-CV-1544 TIA, 2014 WL 5385113, at *3 (E.D. Mo. Oct. 10, 2014).

granuloma is a result of the body attempting to contain an infection by walling it off from the rest of the body. Dr. Weaver observed no purulence (pus). Dr. Weaver assessed Plaintiff with an ingrown toenail and prescribed another antibiotic, Neomycin, to supplement Plaintiff's Keflex prescription. Dr. Weaver then removed one-third of the nail on Plaintiff's right great toe without complications and noted that, if the granuloma did not resolve naturally, a surgical removal could be considered. If an infection is progressing, it is appropriate to remove part of the ingrown toenail so that the area can drain and reduce the infection. This helps reduce swelling and inflammation. (Id.). On March 18, 2017, Plaintiff refused his dressing change. (SOF at ¶ 18).

On April 11, 2017, Plaintiff saw Nurse Audrey Ford for complaints of a big toe infection which caused discomfort and showed no improvement. (SOF at ¶ 19). Upon examination, Nurse Ford noted a slightly swollen right great toe with redness around the left side of the toenail. She referred Plaintiff to a physician for reassessment. (Id.).

On April 26, 2017, Plaintiff saw Nurse Tina Neer for complaints of an infected toe. (SOF at ¶ 20). Nurse Neer noted a red and swollen right great toe nail with serosanguinous (containing blood) drainage. She obtained a verbal order for Betadine foot soaks for ten days from Dr. Weaver and instructed Plaintiff to report any changes to the medical staff. Dr. Weaver ordered Keflex 500mg for 14 days and foot soaks for 10 days. (Id.).

On April 27, 2017, Plaintiff saw Nurse Rhonda Burge for a Betadine foot soak. (SOF at ¶ 21). Nurse Burge noted that Plaintiff's right great toe was red and swollen. On April 28, 2017, Plaintiff saw Nurse Burge for a Betadine foot soak. Nurse Burge noted some improvement. Plaintiff was scheduled for an appointment with Defendant, but he complained about waiting, left, and did not want to reschedule. (Id.). On April 29 and 30, 2017, Plaintiff did not report for

his Keflex or foot soaks. (SOF at ¶ 22). On May 1 and 2, 2017, Plaintiff reported for his foot soaks, but not for his Keflex. (Id.).

On May 3, 2017, Nurse Burge saw Plaintiff for a foot soak and noted some improvement. (SOF at ¶ 23). Nurse Neer observed signs of healing on May 4, 2017, and Plaintiff reported improved pain. (SOF at ¶ 24). On May 5, 2017, Plaintiff did not show for his foot soak. (SOF at ¶ 25). On May 6, 2017, Plaintiff saw Nurse Burge for a foot soak. At that time, Nurse Burge noted some swelling around Plaintiff's right great toe. (SOF at ¶ 26). On May 12, 2017, Plaintiff saw Nurse Kerri Stoner for continued toe complaints. (SOF at ¶ 27). She referred him to a doctor for further evaluation. (Id.).

On May 16, 2017, Defendant first saw Plaintiff, who complained of an infected toenail to the right great toe. (SOF at ¶ 28). He stated he ripped an ingrown toenail out about three months ago. Defendant noted that Plaintiff had been treated with Betadine soaks and Keflex and exhibited good healing of the wound. Defendant also observed a hypertrophic scar on the medial, right great toe with moderate redness and induration at the proximal nail bed. Defendant assessed Plaintiff with an infected ingrown toenail right great toe that was healing well and prescribed ibuprofen for pain and inflammation, Clindamycin (an antibiotic), and continued foot soaks for ten days.

On June 5, 2017, Plaintiff saw Nurse Parker for complaints of an infected toe. (SOF at ¶ 29). Nurse Parker noted Plaintiff's great right toe was red, swollen, some macerated skin (skin in contact with moisture for too long) around the edge of the toe. Nurse Parker also noted bloody drainage on the dressing around Plaintiff's toe. She advised Plaintiff to leave the wound open to air when he was not in his cell. Nurse Parker discussed Plaintiff's care with Defendant, who ordered twice-daily Betadine foot soaks for ten days and Clindamycin for ten days. (Id.).

Plaintiff reported for foot soaks on June 6 and 8, 2017, but skipped one of the two foot soaks on June 7, 9, 10, 11, 12, 13, 14, and 15, 2017. (SOF at ¶ 30). On June 14, 2017, Plaintiff told the nurse he did not want to do them. (Id.). On June 16, 2017, Plaintiff had a foot soak at 8:30 a.m. (SOF at ¶ 31). He later saw Dr. Weaver to assess his toe. Dr. Weaver noted that the right first nail medial side had a granuloma formation on the nail and that the toe appeared red and purulent with tenderness. Dr. Weaver assessed Plaintiff with an ingrown toenail of the first toenail medially with infection. He again removed a portion of Plaintiff's toenail, prescribed Augmentin (an antibiotic), and ordered foot soaks once daily with Epsom salts and once daily with Betadine. Dr. Weaver noted that, if the ingrown toenail recurred, Plaintiff would need complete removal with nail growth plate ablation and removal of granulation tissue. Plaintiff was issued a soak pan and Epsom salts. (Id.).

Plaintiff appeared for foot soaks between June 17, 2017, and June 25, 2017. (SOF at ¶ 32). On July 12, 2017, Nurse Parker saw Plaintiff and noted some improvement but continued issues such as swelling and macerated skin. (SOF at ¶ 29).

On July 18, 2017, Plaintiff saw Nurse Practitioner ("NP") Laurel Davison for a follow up on his toe. (SOF at ¶ 34). Plaintiff reported the toenail had grown back in. Upon examination, NP Davison noted a mild ingrown toenail. She advised Plaintiff to use shower-soaks to stretch skin flap away from the ingrowing nail and educated him on nail trimming techniques. She determined there was no indication for complete nail removal and no overt infection and advised him to report to sick call as needed. (Id.).

On August 3, 2017, Plaintiff saw Nurse Stoner and stated his big toe was infected again. (SOF at ¶ 35). Nurse Stoner noted some serosanguinous (yellowish with small amounts of blood) drainage and redness. She discussed Plaintiff's condition with Defendant, who ordered a wound

5

culture to determine the source of Plaintiff's infection. Defendant also ordered Betadine foot soaks for ten days.

Because Plaintiff had tried multiple antibiotics and his infection was recurring, Defendant believed Plaintiff may have had an antibiotic-resistant bacteria and ordered a wound culture. (Id.). Plaintiff had Betadine foot soaks between August 4, 2017, and August 7, 2017. (SOF at ¶ 36). Results of the wound culture received on August 7, 2017 showed the presence of antibiotic-resistant bacteria in Plaintiff's wound. Those bacteria were, however, susceptible to certain antibiotics, such as Ciprofloxacin ("Cipro"). (SOF at ¶ 37).

Plaintiff had a foot soak on August 8, 2017 but did not show up for his foot soaks on August 9 and 10. (SOF at ¶ 39). On August 21, 2017, NP Davison saw Plaintiff, who exhibited skin growing over the side of his toenail. (SOF at ¶ 40). NP Davison consulted with Dr. Ruanne Stamps regarding Plaintiff's wound culture results and prescribed Cipro and twice-daily foot soaks for ten days. (Id.).

Plaintiff had two foot soaks on August 22, 2017, and August 23, 2017. (SOF at ¶ 41). On August 24, 2017, Plaintiff did not show up for his morning foot soak but reported for his evening foot soak. He reported to his twice-daily foot soaks between August 26, 2017, and August 29, 2017. (Id.). Nurse Maurita Jenness saw Plaintiff on August 31, 2017 for a foot soak and referred him to Defendant for further evaluation of his continued toenail complaints. (SOF at ¶ 42).

Defendant saw Plaintiff on September 1, 2017. (SOF at ¶ 43). Defendant noted that Plaintiff had an infected toenail which had not been significantly responsive to several antibiotics. Defendant observed that Plaintiff's right great toe was red and swelling. Defendant assessed a chronic infected right great toenail without a significant responsive to multiple antibiotics and betadine soaks. He ordered continuation of betadine soaks, Clindamycin, two

6

doses of Rocephin (or Ceftriaxone, an antibiotic), and scheduling for a debridement (removal of damaged tissue) and excision of Plaintiff's toenail. Defendant ordered Rocephin because it is an injection and can penetrate deeper in the tissue and get closer to the infection. (Affidavit of Dr. Trinidad Aguilera ("Aguilera Aff."), Doc. No. 18-1 at ¶ 39). Because oral antibiotics had been ineffective, this intramuscular antibiotic was the appropriate next choice. (Id.).

On September 2, 2017, Plaintiff did not show for his Clindamycin, but received his second Rocephin shot. (SOF at ¶ 44). On September 3, 2017, Plaintiff refused a foot soak and stated his medications were making him sick. (SOF at ¶ 45). Plaintiff had foot soaks on September 4 and 5, 2017, but refused a foot soak on September 6, 2017, because he believed it was taking too long. (SOF at ¶ 46). He had foot soaks on September 7-10, 2017. On September 12, 2017, Plaintiff refused a foot soak and stated he did not need it. (Id.).

On September 13, 2017, Defendant saw Plaintiff and performed a partial excision of the medial ingrown toenail. (SOF at ¶ 47). Plaintiff tolerated the procedure well. Defendant ordered lay-ins for no work or recreation for five days. He also ordered daily dressing changes, Bacitracin antibiotic ointment application, and ibuprofen for pain. (Id.) The nursing staff saw Plaintiff on September 14, 15, and 16, 2017, and noted improvement (SOF at ¶ 48).

On September 17, 2017, Plaintiff did not appear for his appointment. Nurse Stoner noted improvement on September 18, 2017. Nurse Kimberly Burgett noted that no redness, swelling, warmth, or foul odor at a dressing change on September 20, 2017. The nursing staff noted continued healing on September 21-23, 2017. (Id.) On September 25, 2017, Plaintiff saw NP Davison for complaints of bumps on his scrotum. (Id. ¶ 49). However, the record reflects no toe complaints. (Id.).

On October 17, 2017, Plaintiff saw Nurse Burgett and complained of an infected toe. (SOF at ¶ 50). He reported the tip of his right great toe was sore to touch. Nurse Burgett noted no swelling or signs or symptoms of infection. She noted she would discuss Plaintiff's condition with Defendant, but Defendant did not recall whether she talked to him or not. (Id.). On October 25, 2017, Plaintiff saw Nurse Burge for complaints of an infected toe. (SOF at ¶ 51). He reported "it was better for a while but has been getting sore and swelling again." He requested removal of his toenail. Nurse Burge noted that the right great toenail bed was slightly swollen and pink and that she would discuss Plaintiff's concerns with a provider. On October 26, 2017, Defendant ordered Amoxicillin, Betadine foot soaks, and a follow-up appointment to assess Plaintiff's condition. (Id.). Plaintiff had Betadine foot soaks between October 27, 2017, and November 1, 2017. (SOF at ¶ 52).

On November 2, 2017, Defendant saw Plaintiff in follow up. (SOF at ¶ 53). He noted Plaintiff appeared to be doing well with minimal serous drainage. Plaintiff's surgical wound was healing well with good granulation tissue. Defendant ordered continuation of Betadine soaks for three times per week for one week. (Id.). Plaintiff had Betadine foot soaks on November 3 and 6, 2017, but refused it on November 8, 2017, stating that it did not help. (SOF at ¶ 54). Plaintiff had a Betadine foot soak on November 10, 2017. (Id.).

On November 14, 2017, Nurse Parker saw Plaintiff for complaints of an infected toe. (SOF at ¶ 55). Nurse Parker noted skin growing over the area of the toenail that was removed and what appeared to be part of a toenail growing from out of the skin. She observed that the area was red with a foul odor and that Plaintiff's Band-Aid was bloody. She instructed Plaintiff to discuss his concerns with a doctor at an upcoming appointment. (Id.).

On November 16, 2017, Dr. Stamps saw Plaintiff and noted his history of partial right great toenail removal. (SOF at ¶ 56). Dr. Stamps noted the skin was growing wrong and a spicule of nail was protruding from the end of Plaintiff's toe. She noted that Plaintiff's toe was tender to palpation and malodorous but without swelling or purulent discharge. She also noted a flap of skin approximately .75 centimeters long on the inner aspect of the toenail that was skin on the outer layer and granulation tissue under. She assessed Plaintiff with a granulation tissue flap and a protruding nail. She prescribed Bactrim for 10 days and a follow up in one week. (Id.).

On November 27, 2017, Dr. Stamps noted that Plaintiff would be referred for a surgical procedure. (SOF at ¶ 57). On December 11, 2017, Dr. Stamps saw Plaintiff, who exhibited slight redness, slight swelling, and clear drainage in his right great toe. (SOF at ¶ 58). She noted that Plaintiff was scheduled to have his nail removed off-site and that she wanted to confirm the absence of a severe infection. She prescribed Bactrim for 5 days. (Id.).

On December 13, 2017, Dr. Alfred Garcia removed Plaintiff's infected ingrown toenail. (SOF at ¶ 59). He ordered a dressing change and shower shoes for one week. The standard of care for an ingrown toenail is to initially perform partial excisions of the ingrown toenail with debridement. It only becomes necessary to remove the entire toenail if the toenail is ingrown on both sides (medial and lateral) or if previous partial excisions were ineffective. (Aguilera Aff. at ¶ 55). Plaintiff saw the medical staff daily between December 13 and 20, 2017, and exhibited appropriate healing. (SOF at ¶ 60). Dr. Stamps noted on December 20, 2017, that Plaintiff was doing well and was not in pain. She ordered follow up as needed. (Id.).

Plaintiff expressed no complaints about his toe until April 18, 2018, when he submitted a Health Services Request again complaining of an ingrown toenail. (SOF at ¶ 61). Nurse Amanda Hargis saw Plaintiff that day for complaints of pain and oozing from under his right great toenail.

9

He reported that he last experienced toenail pain in December 2017, and that his current complaint had been ongoing for one week. Plaintiff exhibited purulent drainage from under his right great toenail and grimaced when it was touched. Nurse Hargis noted she would start betadine foot soaks and consult with a physician about a referral. Defendant ordered Betadine foot soaks for 14 days and a reassessment after completion. (Id.). Plaintiff received foot soaks on April 19 and 21, 2018, but refused a foot soak on April 22, 2018. (SOF at ¶ 62). The medical record indicates Plaintiff had an appointment on April 25, 2018, but it appears he may not have shown up. (SOF at ¶ 63).

On July 27, 2018, Plaintiff was admitted to segregation and denied medical complaints. (SOF at ¶ 64). He continued to deny any medical complaints on August 1, 2018, August 3, 2018, August 10, 2018, August 13, 2018, August 15, 2018, August 18, 2018, September 20, 2018, September 21, 2018, September 24, 2018, and September 26, 2018. (Id.).

## II. Legal standard

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether summary judgment is appropriate in a particular case, the evidence must be viewed in the light most favorable to the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619

(8th Cir. 1988). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. Armour & Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993).

## III. Discussion

Determining whether a doctor has acted with deliberate indifference requires both an objective and a subjective analysis. Jackson v. Buckman, 756 F.3d 1060, 1065 (8th Cir. 2014). Plaintiff must show that: (1) he suffered from an "objectively serious medical need"; and (2) Defendant "actually knew of but deliberately disregarded" that serious medical need. Id. Deliberate indifference is "more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Fourte v. Faulkner County, Ark., 746 F.3d 384, 387 (8th Cir. 2014) (internal quotations and citations omitted). Deliberate indifference may be found where "medical care [is] so inappropriate as to evidence intentional maltreatment." Id. (internal quotations and citations omitted).

### A. Serious medical need

A medical need is sufficiently serious if it has been diagnosed by a physician as requiring treatment, or if it is so obvious that even a layperson would easily recognize the need for medical attention. Ryan v. Armstrong, 850 F.3d 419, 425 (8th Cir. 2017) (citations omitted). A medical need that would be obvious to a layperson makes verifying medical evidence unnecessary. Schaub v. VonWald, 638 F.3d 905, 914 (8th Cir. 2011) (citing Hartsfield v. Colburn, 371 F.3d 454, 457 (8th Cir. 2004)).

A number of courts have found as a matter of law that an ingrown toenail does not constitute a sufficiently serious medical need. See Langford v. Prima, No. 17-cv-11862, 2018 WL 659247, at *4 (E.D. Mich. February 1, 2018) (collecting cases). Other courts have found the

11

pain associated with an ingrown toenail, and the risk of infection or other complications following its removal, may qualify it as an objective, serious medical need. See Lara v. Corizon Corr. Healthcare, No. 1:17-CV-00186-DCN, 2019 WL 1450526, at *3 (D. Idaho Mar. 31, 2019); Werner v. Jones, No. 15-C-103, 2018 WL 317843, at *4 (E.D. Wis. January 5, 2018); Tucker v. Rudd, No. 3:17-CV-00673, 2017 WL 1353420, at *3 (M.D. Tenn. Apr. 13, 2017); Fisher v. Larson, No. 15-CV-0301-NJR, 2015 WL 1746381, at *2 (S.D. Ill. Apr. 14, 2015). Here, Defendant does not dispute that Plaintiff's infected and ingrown toe nail constituted an objectively serious medical need (Doc. No. 19 at 12); however, Defendant argues that the undisputed medical evidence shows he was not deliberately indifferent to that need.

### B. Deliberate indifference

In his complaint, Plaintiff alleges that in November 2016, he developed an infection in his right great toe, causing him great pain. (Doc. No. 1 at 6). In December 2016, he was seen by a sick call nurse who prescribed betadine foot soaks for ten days. (Id. at 6-7). Plaintiff states this treatment failed to provide him any relief, so he again attended a sick call at the end of December, where he was prescribed foot soaks as well as oral antibiotics. (Id. at 7). Plaintiff states "this same treatment was prescribed by an unknown nurse or doctor until September 13, 2017 ... Plaintiff continuously asked to see a podiatrist/surgeon to remedy the infection by surgery ... only to be denied." (Id.). Plaintiff alleges that in September 2017, he was finally treated by Defendant, "an unqualified Corizon doctor," who operated on his toe to remove the toenail and infection but failed to "properly remove all of the toenail that was ingrown or all of the infection." (Id.). As a result, Plaintiff claims the surgery failed to provide him with any relief and that his toe infection has not resolved. Plaintiff states he filed an inmate grievance regarding

12

the alleged failure to provide him with medical care and failure to take him to a specialist for proper care, which was denied.

In support of his motion for summary judgment, Defendant has submitted a number of materials, including his affidavit and copies of pertinent medical records demonstrating that Plaintiff received frequent and proper medical care for his ingrown toenail. As relevant to his claim against Defendant, these materials show that Defendant first saw Plaintiff on May 16, 2017, and then again on September 1, 2017, September 13, 2017, and November 2, 2017. On May 16, 2017, Defendant prescribed Clindamycin, ibuprofen, and foot soaks for Plaintiff. When he learned the infection had returned even after a partial excision, Defendant suspected Plaintiff might have an antibiotic-resistant infection and ordered a wound culture to determine the type of bacteria involved. When a course of Cipro (an antibiotic the lab results suggested may be effective) did not eradicate Plaintiff's infection, on September 1, 2017, Defendant prescribed Clindamycin and Rocephin, a stronger injected antibiotic, and scheduled a debridement and partial excision of Plaintiff's toenail, which he later performed on September 13, 2017. At the November 2, 2017 appointment, Defendant observed that Plaintiff's toenail appeared to be healing well and did not require additional measures. The medical records also reveal multiple instances of Plaintiff's noncompliance with treatment protocols, refusing dressing changes and foot soaks; failing to report for doses of his prescribed antibiotics; and missing scheduled appointments with medical providers, all of which impeded his recovery.

To the extent Plaintiff alleges Defendant failed to properly remove the entire toenail or infection, such a claim sounds in negligence or medical malpractice and cannot be sustained under the Eighth Amendment. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000); Smith v. Jenkins, 919 F.2d. 90, 93 (8th Cir. 1990). Likewise, Plaintiff's claim that Defendant refused to

13

refer him for specialty care is a disagreement with a course of treatment or medical diagnosis and is insufficient to establish deliberate indifference. Fourte, 746 F.3d at 387.

In his response, Plaintiff has provided nothing of substance to rebut Defendant's showing or to support his contentions that the medical treatment Defendant provided him was inadequate. Thus, Plaintiff fails to meet his burden of proof as a matter of law. See Jolly, 205 F.3d at 1096 (stating it is plaintiff's burden to establish the elements of deliberate indifference); Moore ex rel. Moore v. Briggs, 381 F.3d 771 (8th Cir. 2004) (stating an analysis for summary judgment must be based on the record of evidence, not conclusory allegations of deliberate indifference).

**IV. Conclusion**

Summary judgment is appropriate when one party has presented no evidence sufficient to create a question of fact regarding an essential element of that party's claim. Brooks v. Roy, 776 F.3d 957, 959 (8th Cir. 2015) (citing St. Martin v. City of St. Paul, 680 F.3d 1027, 1032 (8th Cir. 2012)). There being no evidence from which a reasonable jury could find that Defendant acted with deliberate indifference to Plaintiff's serious medical needs, Plaintiff fails to state a claim under § 1983, and Defendant is entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Trinidad Aguilera, M.D.'s Motion for Summary Judgment [17] is **GRANTED**.

A separate Judgment will accompany this Memorandum and Order.

Dated this 16th day of September, 2019.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE